Nick **FRANKLIN**, Mike **Furness**, Daryl **Simmons**, aka White D. **Simmons**, Jim **Spens**, Tom W. **Sutton**, Gordon **Osborn**, Ron **Snow**, Dale R. **Blackham**, Carlo M. **Perkins**, Larry Kent **Ludlow**, Rial **Allen**, Leslie D. **Allred**, Keith D. **Sondrup**, Doug B. **Wagstaff**, Dennis **Hullinger**, Jack D. **Gardner**, David C. **Johnson**, and Kurt **Roberts**, on behalf of themselves and all other members of the Utah Education Association similarly situated, Plaintiffs and Appellants,

v.

**UTAH STATE RETIREMENT BOARD**, Defendant and Appellee.

No. 870282.

Supreme Court of Utah.

Sept. 5, 1989.

Michael T. McCoy, Salt Lake City, for plaintiffs and appellants.

Mark Madsen, Salt Lake City, for defendant and appellee.

STEWART, Justice:

This case is an appeal from an order of the district court dismissing the complaint for failure to state a claim. We affirm.

The issue on this appeal, as stated in the plaintiffs' brief, is

> whether there was an unconstitutional denial of equal protection of the law under statutes governing the Utah State Retirement Office which allowed Plaintiffs to contribute to the State Retirement Office on both their primary and secondary income, but preclude the State Retirement Office from including secondary income when determining retirement benefits.

The Utah State Retirement Board receives payments from employees based on a percentage of an employee's salary. A school teacher's primary income is the teacher's regular salary. Additional payments are made when a teacher renders extra services, such as career ladder services or coaching athletics or debate. Such payments are called secondary income. Secondary income has been included in some, but not all, teachers' compensation for the purpose of determining the contribution to the state retirement system. Retirement benefits are based on the final average salary of a member. "Final average salary" was defined by Utah Code Ann. § 49–10–6(21) (1981) (repealed 1987) to allow secondary income to be included in calculating the employee's benefit if contributions were made on such income, but §§ 49–9–17 and 49–9–18 (1981) (repealed 1987) limited the amount of a retirement benefit to that determined by an employee's primary income only. The statute thus prohibited the inclusion of secondary income in the calculation of the final average salary.

On June 22, 1983, and again on November 8, 1984, the Utah State Retirement Board adopted resolutions in which it defined income for purposes of determining the amount of the contribution to the state retirement fund and determined that the amount was to be based on the person's primary income. Secondary income was to be excluded. Both resolutions allowed the member to request a refund of amounts paid to the state retirement system of the contributions from secondary income. However, on May 16, 1985, the State Retirement Board adopted a resolution terminating the right to those refunds. Prior thereto, several members had requested and received refunds under the resolutions of June 22, 1983, and November 8, 1984. The reason for the termination was that in 1985, the Utah Legislature enacted H.B. 299, 1985 Utah Laws ch. 108, which adopted definitions of compensation for purposes of determining an employee's retirement contributions based on compensation subject to social security deductions. The same definitions were used for calculating the employee's retirement benefits.

The 1985 enactment eliminated much of the problem created by the earlier laws and practices of the state retirement system. This suit arose, however, because the plaintiffs could not take advantage of the statutory change without retiring, and after enactment of H.B. 299, the State Retirement Board refused to give any refunds for contributions made on secondary income.

On the facts adumbrated in the briefs, we conclude that the trial court correctly ruled that the plaintiffs have failed to state a claim for relief based upon a denial of equal protection under the Fourteenth Amendment to the United States Constitution. While it appears reasonably clear that there is a discrimination against the plaintiffs in the sense that they have not been able to obtain a refund of contributions on secondary income, whereas others in the same class have, that does not demonstrate the existence of a denial of equal protection of the laws. First, it is not clear that the plaintiffs could not have obtained

a refund had they acted timely, and there is nothing in the record that bears upon that issue in any way. The parties have simply failed to provide any information at all on the issue. We can only presume that the Board acted in a constitutional manner. Second, it appears that the plaintiffs can make up the contributions on secondary income by way of increased retirement benefits. The Board asserts that a plaintiff who contributed on secondary income compensation and is subject to social security deductions may benefit from that contribution in the calculation of the final average salary under the 1985 enactment and that his retirement benefit will be substantially enhanced thereby. In that event, the discrimination noted earlier is not unreasonable.[1]

Affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

---

**1.** The only issue raised in this case is the constitutional issue. Whether the Board has construed the relevant statutes properly is not before us. If there are some employees who have paid on secondary income and will not benefit from that payment in their final average salary, we have not been so informed; nor have we been informed whether they might have a remedy short of a constitutional remedy.